**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNIONS AND PARTICIPATING EMPLOYERS PENSION FUND AND ITS TRUSTEES, | * | |
| | * | |
| Plaintiffs, | * | |
| v. | | Case No.: GJH-16-2903 |
| | * | |
| MAGRUDER HOLDINGS, INC., et al., | | |
| | * | |
| Defendants. | | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM OPINION

Magruder Holdings, Inc. ("Magruders") was a grocery chain that, before it went out of business, was a contributing employer to the United Food and Commercial Workers Pension Fund (the "Fund"). Because Magruders has no assets to cover its withdrawal liability pursuant to the Multiemployer Pension Plan Amendments Act ("MPPAA"), the Fund now seeks to recover from Fanaroff & Steppa, LLC ("F&S"), and Bedrock Asset Management, LLC ("Bedrock"), two real estate investment companies that allegedly share ownership interests with Magruders. The claim is brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the MPPAA, 29 U.S.C. §§ 1001, et seq. (1982). The parties have submitted cross-motions for summary judgment. *See* ECF Nos. 39, 42, 44, 49. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Plaintiffs' Motions for Summary Judgment, ECF Nos. 42, 48, are denied. Defendants' Motions for Summary Judgment, ECF Nos. 39, 44, are

denied. The interim Motions to Seal, ECF Nos. 43, 50, 54, are preliminarily denied, and the documents will be unsealed in 14 days absent a showing of good cause.[1]

## I.     BACKGROUND

Louis Fanaroff founded Magruders, a chain of grocery stores in the Washington, D.C. metropolitan area, with his brother-in-law Stanford Steppa on November 27, 1985. ECF Nos. 42-21 at 3, 42-23 at 3.[2] Steven Fanaroff, Debby Bortnick, Wendy Ravick, and Sonia Polsky (collectively, "the Siblings") are the sibling children of Louis Fanaroff (now deceased) and the nephews and nieces of Stanford Steppa. ECF No. 40 ¶ 32. Stanford is married to Elaine Steppa, Steven is married to Susan Fanaroff, Debby is married to Gary Bortnick, and Sonia Polsky is married to Mark Polsky; Wendy Ravick is unmarried. *Id*; *see also* ECF No. 42-24 at 11.

The United Food and Commercial Workers ("UFCW") represented workers at Magruders, *see* ECF No. 42-23 at 3, who had negotiated benefits provided by the Fund, to which Magruders became a contributing employer. ECF Nos. 42-1 ¶ 7, 44-1 at 7. But when Magruders went out of business in 2013, it ceased contributing to the Fund. ECF No. 44-1 at 7-8. Magruders forfeited its charter with the State of Maryland on October 3, 2014. ECF No. 42-22 at 2.

On May 3, 2013, the Fund's Trustees issued a withdrawal liability demand to Magruders, requiring it to furnish "a complete list of the owners, and percentage of ownership" of Magruders. ECF No. 42-2 at 3. On May 23, 2013, the Fund received a letter from Gary Bortnick, Magruders' Vice President and Chief Operating Officer, stating that the owners of Magruders and their respective ownership percentages were:

---

[1] Defendants have not presented to the Court any justification for keeping the Motions for Summary Judgment under seal. Though courts often sanction extensive confidentiality during the discovery phase, once "documents are made part of a dispositive motion, such as a summary judgment motion, they lose their status as being 'raw fruits of discovery'" and the party seeking to seal must show some significant interest that outweighs the presumption of access accorded to judicial records. *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988).

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

- Stanford Steppa: 20.0006%
- Elaine Steppa: 20.0006%)
- Sonia and Mark Polsky as tenants in the entirety: 1.7663%
- Mark Polsky: 0.9909%
- Sonia Polsky: 12.6667%
- Debby and Gary Bortnick as tenants in the entirety: 1.7663%
- Gary Bortnick: 0.9909%
- Debby Bortnick: 12.6667%
- Steven and Susan Fanaroff as tenants in the entirety: 1.7663%
- Steven Fanaroff: 12.6667%
- Susan Fanaroff: 0.9909%
- Wendy Ravick: 13.1969%
- The Irrevocable Inter Vivos Trust f/b/o The Ravick Children: 0.5303%

ECF No. 42-3. The same chart listed the owners of F&S and their respective ownership

percentages as:

- Stanford Steppa Fanaroff & Steppa LLC Trust: 30%
- Elaine Steppa Fanaroff & Steppa LLC Trust: 10%
- Debby Bortnick Revocable Trust: 2.75%
- Steven Fanaroff Revocable Trust: 2.75%
- Sonia Polsky Revocable Trust: 2.75%
- Wendy Ravick Revocable Trust: 2.75%
- Fanaroff Family Trust: 49%

*Id*. Bedrock has admitted that Stanford Steppa, Gary Bortnick, Steven Fanaroff, Mark Polsky,

and Wendy Ravick each owned a 20% interest in Bedrock as of January 2013. ECF Nos. 39 at 8,

39-1 ¶ 6.

## II.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is appropriate only when the Court,

viewing the record as a whole and in the light most favorable to the nonmoving party, determines

that there exists no genuine issue of material fact and the moving party is entitled to judgment as

a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The burden is on the

moving party to demonstrate that there exists no genuine dispute of material fact. *Pulliam Inv.*

*Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). To defeat the motion, the nonmoving

party must submit evidence showing facts sufficient for a fair-minded jury to reasonably return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Under Fed. R. Civ. P. 56, a party must be able to put facts to be considered in support of or opposition to a motion for summary judgment in an admissible form. *See Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 398, 407 (D. Md. 2015).

Cross-motions for summary judgment require that the Court consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). "The Court must deny both motions if it finds a genuine issue of material fact, 'but if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment.'" *Wallace v. Paulos*, No. DKC 2008-0251, 2009 WL 3216622, at *4 (D. Md. 2009) (citation omitted).

## III. DISCUSSION

The MPPAA and ERISA hold all "trades and businesses" that are under "common control" with an entity jointly and severally liable for any withdrawal liability generated by that entity's activities. *See* 29 U.S.C. § 1301(b)(1); *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 120 (4th Cir. 1991). Plaintiffs claim that both F&S and Bedrock were in a controlled group with Magruders at the time of its withdrawal and are each therefore liable for Magruder's withdrawal liability.

To establish that Defendants F&S and Bedrock are in a controlled group with Magruders, Plaintiffs must prove that Defendants are "trades [or] businesses" and that they are under "common control" with Magruders. *Id.* The parties do not dispute that F&S and Bedrock are trades or businesses. To determine whether two entities are in "common control," the court must

determine whether five or fewer individuals together own a "controlling interest" of each corporation, and the same five or fewer individuals also have "effective control" of both corporations. 26 C.F.R. § 1.414(c)-2(b)(2), § 1.414(c)-2(c)(1). A "controlling interest" is considered 80% or more of the interest in each corporation. *Id.* at (b)(2). "Effective control" means the same five or fewer individuals own more than 50% of the interest in each corporation "to the extent such ownership is identical with respect to each such organization." *Id.* at (c)(1)(ii). For example, if Jane Doe owns 65% of Corporation Y and 20% of Corporation Z, her identical ownership of the two organizations is only 20%. To constitute effective control over both corporations, the identical ownership of her and up to four other owners must amount to at least 50%.

Defendant F&S moves for summary judgment on two grounds: first, that UFCW's proffered evidence of Magruders' ownership structure is inadmissible, and second, that even if Magruders' structure is established, F&S does not, in fact, share a controlled group with Magruders. Defendant Bedrock moves for summary judgment on the same evidentiary grounds regarding Magruders' ownership structure. Plaintiffs move for summary judgment, asserting that the evidence of the ownership structure establishes that F&S and Bedrock both share a controlled group with Magruders.

A. Evidence of Magruders' Ownership

Defendants claim that the May 23, 2013, letter from Gary Bortnick to the Fund (the "Letter"), which demonstrates the ownership percentages for Magruders, is inadmissible hearsay that cannot be authenticated. Plaintiffs counter with a number of theories contending that the Letter is either non-hearsay or admissible as an exception to the hearsay rule, including: Fed. R. Evid. 801(d)(2) (statement of a party opponent); Fed. R. Evid. 803(5) (recorded recollection);

Fed. R. Evid. 803(15) (statement affecting an interest in property); or a residual exception to hearsay, Fed. R. Evid. 807.

If Rule 801(d)(2) applied, the statement would not be hearsay because it would be the admission of a party opponent; however, it does not apply here because the statement was made (allegedly) by Bortnick acting on behalf of Magruder. Plaintiffs do not wish to use the statement as an admission against Magruder, but against two separate entities not responsible for the statement. Therefore, Rule 801(d)(2) does not apply.

As to the three hearsay exceptions, 803(5) appears to have potential applicability. Fed. R. Evid. 803(5) allows the admission of a record that: (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge. Bortnick was Magruders' Vice President and Chief Operating Officer. In response to the Funds' request for Magruders' ownership information—information that ERISA required Magruders to furnish—Bortnick apparently supplied the ownership information at issue here. The Letter states clearly that Bortnick "enclosed a chart with the [ownership] information [the Funds] requested." ECF No. 42-3 at 2. In a separate letter dated November 27, 2013, Bortnick seems to have confirmed that he had sent the ownership documents to the fund. ECF No. 42-13 at 2 ("I previously supplied you the listed shareholders ownership interest in Magruder's.").

Defendants counter that the Letter does not meet the requirements of Rule 803(5)(A) or 803(5)(B) because the Funds have not proven that Bortnick "had personal knowledge to support the ownership assertions" in the chart. ECF No. 52 at 15; *see* Fed. R. Evid. 602 (a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has

personal knowledge of the matter."). Defendants' concern has some merit given the record.[3] In his deposition, Bortnick stated that he could remember neither whether he had written the Letter nor whether he had created the ownership chart in the Letter. ECF No. 44-3 at 5. Indeed, he states, repeatedly and summarily, that he does not remember anything about the Letter or the ownership information contained therein. *Id.* Although these facts would not by themselves be fatal to the recorded recollection exception, it does trouble the Court that Bortnick also raises the concern that the signature on the Letter may not have even been his. ECF No. 44-4 at 5. The Court notes here that a review of Bortnick's seeming complete memory loss in his deposition transcript does raise some concerns about the veracity of his statements; however, a comparison of the signature on the Letter and a signature purporting to be that of Gary Bortnick on another document are visibly distinctive such that it lends some credence to the possibility that Bortnick did not sign the Letter and did not have personal knowledge of its contents. *Compare* ECF No. 44-4 at 130 with ECF No. 44-4 at 127. This raises a dispute of fact that must be resolved prior to determining if the Letter can be admitted; specifically, whether or not Bortnick actually authored the Letter and the attached chart. *See, cf.,* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."). Thus, Summary Judgment in favor of the Plaintiff is Denied.

B. Ownership of Magruders, F&S, and Bedrock

The May 23, 2013 Letter from Gary Bortnick is the only evidence in the record as to the ownership of Magruders. If the Letter is ultimately admitted, Magruders' ownership is undisputed for the purposes of this motion. Under spousal attribution regulations, an individual's

---

[3] This concern would apply equally to each of the suggested hearsay exceptions. *See* Fed. R. Evid. 803 advisory committee's note ("In a hearsay situation, the declarant is, of course, a witness, and neither this rule nor Rule 804 dispenses with the requirement of firsthand knowledge.").

ownership in a corporation can be attributed to their spouse. 26 C.F.R. § 1.414(c)-4(b)(5). Therefore, if the Letter is admitted, ownership of Magruders can be attributed as follows: Stanford Steppa-40%, Debby Bortnick-15.4%, Steven Fanaroff-15.4%, Sonia Polsky-15.4%, Wendy Ravick-13.2%. This group of five individuals thus owned 99.4% of Magruders, well in excess of the 80% threshold for "controlling interest."

Bedrock has admitted that, under spousal attribution rules, Stanford Steppa, Debby Bortnick, Steven Fanaroff, Sonia Polsky, and Wendy Ravick each owned a 20% interest in Bedrock as of January 2013. ECF No. 39 at 8. These same five individuals thus own 100% of Bedrock, also in excess of the 80% threshold for "controlling interest." The identical ownership between the two corporations for each individual is thus: Stanford Steppa-20%, Debby Bortnick-15.4%, Steven Fanaroff-15.4%, Sonia Polsky-15.4%, Wendy Ravick-13.2%. The identical ownership percentages amount to 79.4%, in excess of the 50% requirement for "effective control." Because the same five or fewer individuals would have both a controlling interest and effective control of Magruders and Bedrock at the time of Magruders' withdrawal from the Fund, the two corporations would be in common control and Bedrock would be jointly and severally liable for Magruders' withdrawal liability. Thus, pending resolution of the evidentiary issue above, Bedrock's Motion for Summary Judgment is Denied.

The ownership structure of F&S is similarly undisputed, but more complicated. F&S is owned by several trusts. The Stanford Steppa Fanaroff & Steppa LLC Trust and the Elaine Steppa Fanaroff & Steppa LLC Trust (collectively, the "Steppa Trusts") together own 40% of F&S. ECF 44-1 at 19. It is undisputed that the Steppa Trusts are "grantor trusts," and therefore the respective ownership interests in F&S held by these trusts are attributed to Stanford and

Elaine Steppa individually. *Id*. Due to the spousal attribution rule, Stanford Steppa can thus be deemed to own 40% of F&S.

Furthermore, the Debby Bortnick Revocable Trust, the Steven Fanaroff Revocable Trust, the Sonia Polsky Revocable Trust, and the Wendy Ravick Revocable Trust (collectively, the "Sibling Trusts") each own a 2.75% interest in F&S. The Sibling Trusts are also grantor trusts, so each percentage stake can be attributed to the respective named sibling of each trust. ECF No. 44-1 at 18, n. 56. Together, the Steppa Trusts and the Sibling Trusts amount to a controlling interest of 51% and an identical interest of 51%: sufficient to establish "effective control" but insufficient to meet the 80% controlling interest threshold to establish a controlled group. Therefore, whether F&S and Magruders are in a controlled group turns on whether the ownership interest in F&S held by the Fanaroff Family Trust (the "Family Trust")—the remaining 49% interest—can be attributed to Stanford Steppa and/or the Siblings (Debby Bortnick, Steven Fanaroff, Sonia Polsky, and Wendy Ravick). ECF No. 40 ¶ 38.

The Siblings serve as the Trustees of the Family Trust. ECF No. 44-1 at 20. The beneficiaries of the Trust are four separate special trusts (the "Special Trusts") for the respective benefit of each of the Siblings. *Id*. The Funds contend that the Family Trust is a grantor trust, and thus the Family Trust ownership stake can be attributed equally to each of the Siblings. *Id*.

"An interest owned, directly or indirectly, by or for any portion of a trust of which a person is considered the owner under subpart E, part I, subchapter J of the Code (relating to grantors and others treated as substantial owners) is considered as owned by such person." 26 C.F.R. § 1.414(c)-4(b)(3)(iii). The referenced section of code refers to 26 U.S.C. § 678(a) (the "Grantor Trust Rule") of the Internal Revenue Code, which states:

> A person other than the grantor shall be treated as the owner of any portion of a trust with respect to which:

> (1) such person has a power exercisable solely by himself to vest the corpus or the income therefrom in himself, or
> (2) such person has previously partially released or otherwise modified such a power and after the release or modification retains such control as would, within the principles of sections 671 to 677, inclusive, subject a grantor of a trust to treatment as the owner thereof.

The Funds contend that the actual usage of the Trusts is evidence that the Siblings have "a power exercisable solely by [themselves] to vest the corpus or the income of any portion of the trust in [themselves]." *Id*. The Court agrees.

The Family Trust Agreement provides that the Siblings, as Trustees of the Special Trusts, can freely distribute the Family Trust's principal interest in F&S to each of the Special Trusts, as long as the distributions amount to equal portions. ECF No. 49-11 at 3-4. In their individual capacities, the Siblings may each withdraw as much of the net income and principal of their respective Special Trusts as they deem necessary for their own health, education, maintenance, and support ("HEMS"). ECF Nos. 49-12, 49-13, 49-14, 49-15. As the Trustees of the Special Trusts, the Siblings may also withdraw as much as necessary for these same purposes for their spouses and descendants. *Id*.

The Siblings took advantage of this allowance, taking monthly payments directly from the Family Trust from January 16, 2011 through December 16, 2015. ECF No. 49-23. Mr. David Flinchum, accountant for F&S, explained during his deposition that these payments were calculated by dividing into four equal parts the total amount that the Family Trust received from F&S each month, and were distributed to the Siblings without taking into consideration the HEMS of each of the Siblings. ECF No. 49-7 at 39-40.

F&S's Operating Agreement also allows the Trustee Siblings to distribute their portion of the Family Trust's ownership interest in F&S to the Special Trusts either 1.) with approval of members owning more than 60% of F&S or 2.) after going through a process in which the

ownership interest is first offered to the Company and the other Members. ECF No. 44-4 at 94-97.

Defendants counter that the HEMS limitation on the distribution of principal or income necessarily precludes the application of the Grantor Trust Rule, as it prevents the siblings from having a power exercisable solely by themselves to vest the corpus or the income therefrom in themselves. But Defendants introduce no evidence that the HEMS limitation was dutifully followed. To the contrary, Mr. Flinchum explained that HEMS was not taken into consideration when payments were distributed to the Siblings. ECF No. 49-7 at 40. He also stated that none of the siblings had ever discussed with him whether a payment complied with HEMS requirements. ECF No. 53-3 at 6-7. The Siblings either could not recall having ever consulted with anyone regarding HEMS requirements, ECF Nos. 53-4 at 9, 53-5 at 6-7, or admitted that they had never declined a payment because of the HEMS requirements, ECF No. 53-6 at 5-6. Regardless of whether, as Defendants suggest, a dutifully followed HEMS provision nullifies the application of the Grantor Trust Rule as a matter of law, a HEMS provision that exists only on paper cannot be said to restrict the power exercisable by the Siblings as to the Family Trust. Therefore, the Grantor Trust Rule applies, and the Family Trust's 49% ownership of F&S will be attributed evenly to the Siblings.[4] If the Bortnick Letter is deemed admissible, this attribution of ownership interest results in a controlling interest of 100% and an identical ownership of 98.2% as to Magruders and F&S. Therefore, the two corporations would be in common control and F&S would be jointly and severally liable for Magruders' withdrawal liability. Pending the resolution of the evidentiary issue above, Defendant F&S' Motion for Summary Judgment is Denied.

## IV.     CONCLUSION

---

[4] Because the Court resolves the question of ownership using the Grantor Trust Rule, it need not determine how to calculate the Siblings' actuarial interest in F&S.

Plaintiffs' Motions for Summary Judgment, ECF Nos. 42, 48, are denied. Defendants' Motions for Summary Judgment, ECF Nos. 39, 44, are denied. The interim Motions to Seal, ECF Nos. 43, 50, 54, are preliminarily denied, and the records will be unsealed in 14 days absent a showing of good cause. A separate Order shall issue.


Dated: <u>March 27, 2019</u>                          /s/_____
                                                                    GEORGE J. HAZEL
                                                                    United States District Judge